LAMKIN IP DEFENSE
Rachael D. Lamkin (246066)
655 Montgomery St., 7th Floor
San Francisco, CA 94111
916.747.6091
RDL@LamkinIPDefense.com

*Attorneys for DJ Plaintiff*
*V. Sattui Winery*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| V. Sattui Winery<br><br>Plaintiff,<br><br>v.<br><br>Landmark A, LLC<br><br>Defendant. | **PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY**<br><br>Case No. |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY**

Plaintiff V. Sattui Winery ("VS Winery") respectfully files this Complaint seeking a declaratory judgment of non-infringement and invalidity as to United States Patent No. 7,010,508 (the '508 Patent).

**NATURE OF THE ACTION**

1. This is an action for a declaratory judgment of non-infringement and invalidity arising under the patent laws of the United States, Title 35 of the United States Code, and for claims for Unlawful & Unfair Business Practices. A true and correct copy of the '508 Patent is attached as Exhibit A.

## THE PARTIES

2. **Plaintiff V. Sattui Winery**. Plaintiff is a winery formed in 1885 by Vittorio Sattui, an immigrant from Genoa, Italy. The winery voluntarily shut down when Prohibition went into effect. The winery lay dormant until 1976, when Vittorio's great-grandson, Dario, resurrected the family business in the town of St. Helena in Napa Valley.

3. The product accused of infringement by Landmark is a standard off-the-shelf ecommerce website, https://www.vsattui.com.

4. **Defendant Landmark Technology A, LLC ("Landmark A")**. Landmark A is a newly formed North Carolina limited liability company.

5. From issuance until December of last year, the '805 Patent was owned by Landmark Technologies, LLC ("Landmark"). Landmark, and possibly Landmark A, are owned in whole or in part by named inventor Lawrence B. Lockwood.

6. The Los Angeles Times reported:

a. Lockwood graduated from La Jolla High in 1965 and attended three area colleges and universities, pursuing liberal arts studies without receiving a degree. During much of the 1970s, he worked for his father's small travel agency as well as his father's printing shop.

b. Mr. Lockwood is not a computer scientist and has testified in deposition that he "had never, for any length of time, used a personal computer" prior to filing his patent applications that matured into the Asserted Patent. (Exhibit B.)

7. Landmark, its predecessor PanIP LLC, and Landmark A have sued hundreds of companies for nuisance value amounts. The cases rarely go to the merits; the '508 Patent has never made it to claim construction (with the exception of the Patent Trial And Appeal Board of the USPTO finding its claims indefinite, discussed *infra*.)

## JURISDICTION AND VENUE

8. This Complaint arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq. based on Defendant's threats to sue Plaintiff for patent infringement, thereby giving rise to an actual case or controversy under 28 U.S.C. §§ 2201 and 2202. Defendant Landmark A sent to VS Winery a cease and desist letter, demanding that VS Winery take a license and threatening litigation. (Exhibit C.) Landmark A has thus purposefully directed its charges of infringement to VS Winery, which conducts business in the Northern District of California. Landmark A's charges arise out of Landmark A's patent licensing activities in the Northern

District, pursued in letters from Landmark A and its counsel. As such, jurisdiction over Landmark A in this forum is proper, reasonable, and fair.

9. Venue is proper in this District because VS Winery is incorporated in this State and its only place of business is in this District. Further, Landmark A's only business is licensing and by sending its enforcement letter into this District, it does business in this District.

**IMPORTANT BACKGROUND**

***The Instant Infringement Allegations***

10. On July 26, 2019, Plaintiff VS Winery received a licensing demand from Landmark A, citing US Patent No. 7,010,508 ("Demand Letter"). (Exhibit C.)

11. Landmark A accused Plaintiff's standard ecommerce website of infringement.

12. Landmark A asked for a $65,000 dollar nuisance-value settlement.

13. Landmark A stated that the $65,000 dollar number is a "substantial discount to the historical licensing price of Landmark's portfolio" but it appears Landmark A offers everyone the same number. All sight unseen. (*See* Exhibits C-D.)

14. The demand letters sent by Landmark A and its counsel appear to each employ identical infringement allegations that ignore the bulk of the claim limitations. (*Id.*)

15. The demand letters sent by Landmark A also employ statements that are clearly false, e.g., (1) purport to conduct an infringement analysis but fail to cite the specific limitations that demonstrate non-infringement (*e.g.,* the video user interface limitations discussed *infra*); (2) or the claim that Landmark's patents are "widely regarded".

16. Landmark A's demand letters also continue to repeat claims, such as being a "pioneer patent," when the USPTO has already chastised Lockwood for employing the term, explaining that the phrase does not indicate that the '805 Patent is a technological invention. (Exhibit E, at 14-15.)

***The '805 Patent***

17. The '508 patent is directed to "terminals used by banking and other financial institutions to make their services available at all hours of the day from various remote locations." '508, 1:22-25.

18. Fatal to Landmark A's infringement allegations, the Patent Trial and Appeal Board at the USPTO determined that the claims of the '805 are directed toward "a financial product or service" under the Americans Invent Act ("AIA"). (Exhibit E, at 12.)

19. As such, no reasonable litigant could believe that the '805 reads on website that sells wine.

20. Figure 1 is representative of the claims of the '805:




21. The terminals (aka stations, 105) of the claimed system are analogous to ATMs where a user visits the remote terminal and interacts with that terminal.

22. But instead of obtaining cash from one's own account, the user obtains a loan or other financial product from a third party institution.

23. Further, according to Landmark A and its representatives, the terminals of the '805 themselves were able to perform complex, on site, operations.

24. According to Landmark A and its representatives, the interactive multimedia terminal is uniquely capable of providing a video-based user interface while dynamically sending and fetching remote information.

25. According to Landmark A and its representatives, the '508 patent presents a key technical solution to the technical problem of tying together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals. Each remote terminal displays a live image and interactive series of questions and answers.

26. According to Landmark A and its representatives, the claims of the '508 require an interactive video presentation on the video display of the station or terminal.

27. In other words, the interactive multimedia terminal of the '508 Patent is capable of providing a video-based user interface.

28. The claims of the '508 require that the terminal itself contain sequences including instructions for operating said station, and said instructions are provided through the video interface.

29. According to Landmark A and its representatives, because each proposed applicant using the terminal (or station) of the '508 Patent will provide different answers to earlier questions, the proposed applicant may be provided with subsequent questions different from those posed to some other proposed applicant.

30. In other words, as Landmark A explains, each user of the claimed system of the '508 Patent will be provided with an individualized presentation via the video-based interface.

31. The claims of the '508 require that its system makes suggestions, or independently provides something different than what was requested but more responsive to the user's needs, and output said suggestions via the video display.

32. The claims of the '508 require forward chaining as that term is defined by Lockwood.

33. The forward chaining happens on-site at the station or terminal.

34. In other words:

a. the claimed terminal or station of the '805 Patent interacts with a user who visits the remote location of the terminal in order to obtain a financial product or service.

b. The terminal presents the user with a live image of a "fictitious" financial institution employee (e.g. a fictitious loan officer) who first, tells the user how to use the terminal.

c. The user and the fictitious employee then engage in an iterative back and forth. The user types questions into a keyboard or touch pad and the fictitious employee answers the user's questions through the video user interface.

d. Further, the fictitious employee is able to make suggestions for financial products or services that were not raised by the user (e.g., a small loan or different type of investment than the one sought).

e. Concurrently, the terminal is able to "forward chain;" *i.e.*, take in information from a third-party entity (like a credit rating service) and the user to offer the user new, information, unique to that user.

***VS Winery's Ecommerce Website Has Nothing to do With The '805 Patent***

35. Clearly, the above-described patent has nothing to do with a standard ecommerce website such as VS Winery's.

36. VS Winery does not offer financial products or service such loans or stocks.

37. VS Winery sells wine.

38. To buy wine from VS Winery's website, a customer accesses VS Winery's website through the browser on her home computer, laptop, or mobile device.

39. There is no fictitious employee then viewed on the customer's screen using the customer's browser.

40. There is no fictitious employee offering instructions to the customer on how she might user her own computer, and certainly not through a video-based interface.

41. The videos on VS Winery's website are hosted by YouTube.

42. The YouTube videos the user sees with her browser on her computer or mobile screen are static (*i.e.*, not at all interactive).

43. VS Winery's ecommerce website has none of the above claimed functionality:

a. no interactive video,

b. no unique presentation to the operator,

c. no forward chaining.

44. VS Winery's ecommerce website, which sells wine through standard shopping functionality, has nothing to do with an alleged complex terminal allowing an operator to interact with a financial institution through a video-based interface on said terminal where the video personality (the "fictitious loan officer") provides to the user directions, information, and products or services different than those sought by the user.

45. Again, no reasonable litigant could conclude the VS Winery's ecommerce website infringes the claims of the '805 Patent.

***Landmark & Landmark A Appear To Be Splitting The Baby. Improperly.***

46. Lockwood initially asserted the '508 Patent via an entity called Landmark Technology LLC ("Landmark").

47. From at least 2008 to 2013, Lockwood caused the '508 Patent to be asserted under Landmark alongside the '319 and '951 Patents (patents in the same family as the '508 Patent).

48. But in February 2009, an entity called Landmark Technology **A**, LLC ("Landmark A") began asserting the '508 Patent.

49. Landmark continues to assert patents in the same family as the ’508, *e.g.*, the ’319 Patent.

50. Landmark A was formed in North Carolina in December 2018; its Articles of Organization were filed with the North Carolina Secretary of State on 12/28/2018.

51. According to documents filed with the North Carolina Secretary of State, the business of Landmark A is “patent licensing”.

52. Lockwood did not file the assignments for the ’508 with the USPTO.

53. Thus, it is unknown whether Lockwood actually transferred the ’508 to Landmark A.

54. Landmark A filed its first lawsuit on February 5, 2019.

55. It is not known whether Landmark and Landmark A have common ownership.

56. Its highly usual for an entity to sever a single patent from a patent family and sell or assign it individually.

57. Lockwood’s severance of the ’508 Patent from its family and assignment thereof to a separate entity suggests that Lockwood may be trying to insulate his separate entities from attorney’s fees awards.

58. Or, possibly, Lockwood has sold off the ’508 Patent to a third-party, who continues to sue under the Landmark “brand” and, most concerning, coordinates with Lockwood in its litigations:

***Landmark and Landmark A are Asserting Different Patents Against the Same Technology***

59. Landmark is asserting the ’319 Patent against ecommerce websites.

60. Concurrently, Landmark A is asserting the ’508 against ecommerce websites.

61. For example, Landmark A has asserted the ’508 Patent against a website that sells fabric through what appears to be a standard ecommerce website. *Landmark Technology A, LLC v. The Miami Corporation*, No. 1:19-cv-00653.

62. In that Complaint, Landmark A alleges, “Landmark A is further informed and believes, and on that basis alleges, that Miami Corporation operates the website https://www.miamicorp.com/, which is a supplier of upholstery fabric, outdoor fabric and upholstery supplies. Miami Corporation derives a significant portion of its revenue from sales and distribution via electronic transactions conducted on and using at least, but not limited to, the Internet websites located at https://miamicorp.com/ and/or the functionality found through the

"sign in" and "cart" functions, and incorporated and/or related systems (collectively the "Miami Corporation Website" or "Accused Instrumentality").

63. Landmark has asserted the '319 Patent against website that sells nuts online. *Landmark Technology, LLC v. Kanan Enterprises, Inc.*, No. 1:18-cv-02339.

64. In that Complaint, Landmark alleges, "Landmark is further informed and believes, and on that basis alleges, that Kanan operates the website www.kingnut.com, which is in the business of selling nuts, snacks and candy. Kanan derives a significant portion of its revenue from sales and distribution via electronic transactions conducted on and using at least, but not limited to, the Internet websites located at www.kingnut.com and/or the functionality found through the "shop now," "sign in" and "login" functions, and incorporated and/or related systems (collectively the "King Nut Website").

65. The language in the complaints from these two different Plaintiffs, asserting two different patents, is nearly identical.

66. By way of second example, in the *Miami* case, *supra*, Landmark A filed an infringement chart with its complaint that employs a "representative terminal" as a stand in for the terminal in the asserted '508 Patent.

67. The core of the claimed system in the '508 Patent is the allegedly special terminal described above.

68. Yet Landmark A employs an off-the-shelf "representative terminal" in its infringement charts, an HP Compaq 6200 Pro Desktop PC. (*Miami*, Dkt. No. 1-8, at 15.)

69. Landmark, an allegedly different entity asserting a different patent, employs the exact same representative terminal in its charts. (*Kanan*, Dkt. No. 1-7, at 10.)

70. Landmark A's use of a "representative terminal" instead of naming an actual terminal used by alleged infringers, especially a standard HP desktop computer, is further evidence of Landmark A's bad faith infringement allegations.

71. Landmark's allegations of infringement against a standard ecommerce website (asserting the '319 Patent) are indistinguishable from Landmark A's allegations of infringement against a standard ecommerce website (asserting the '508 Patent).

72. The fact that two purportedly separate entities are asserting different patents against the same technologies (standard ecommerce websites) in a seemingly coordinated fashion is further evidence of bad faith litigation.

**COUNT 1: DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

73. Plaintiff incorporates by reference paragraphs 1-72, as if fully set forth herein.

74. Plaintiff does not infringe any of the claims of the ’508 Patent for the reasons stated above, *inter alia*.

**COUNT II: DECLARATORY JUDGMENT OF INVALIDITY**

75. Plaintiff incorporates by reference paragraphs 1-74, as if fully set forth herein.

76. Each of the claims of the ’508 patent are invalid pursuant to 35 U.S.C. §§ 101, 102, 103, and 112.

77. For example, at the request of Ebay Enterprises, on May 20, 2014, the Patent Trial And Appeal Board of the USPTO (the “PTAB”) instituted a Covered Business Review of the ’805 Patent. (Exhibit E.)

78. The PTAB determined that the claims of the ’508 patent were likely indefinite. (*Id*., at 22.)

79. The PTAB also determined, “the subject matter of claim 1, as a whole, does not recite “a technological feature that is novel and unobvious over the prior art”. (*Id*., at 14.)

80. Landmark settled with Ebay before a final order issued.

81. Landmark A is asserting claims it understands to be invalid and fatally indefinite.

**JURY TRIAL**

VS Winery requests a jury trial for all issues so triable.

**PRAYER FOR RELIEF**

Plaintiff V. Sattui Winery respectfully seeks:

- An Order determining that its website does not infringe any claim of the ’508 Patent;
- An Order determining that each claim of the ’508 is invalid;
- An order finding Landmark and its counsel jointly and separately liable for Plaintiff’s cost and attorney’s fees pursuant to 35 U.S.C. §285 and 29 U.S.C. §1927.

Respectfully submitted,

Rachael D. Lamkin

Rachael D. Lamkin

*Attorneys for DJ Plaintiff*
*VS Winery*